Bentley, J.
The case of Fertel v. Sampliner et al., and the case of Cohn v. Sampliner et al., are two separate proceedings in error prosecuted to reverse the judgment of the court of common pleas in a certain case pending wherein Sampliner et al., were plaintiffs, and Timothy R*. Strong, as assignee of one Rich, and these petitioners in error were parties defendant. The questions which were raised in the two cases are substantially identical, and the cases were argued and submitted together and will now be disposed of together.
That the record may fairly show the situation under which the judgment 'of this court is rendered, I will briefly state what the situation was in the court of common pleas.
It appeared that a Mr. Rich, a merchant having a stock of goods, made certain chattel mortgages covering the same, one to Mr. Fertel and one to Mr. Cohn, and others to other parties.
The chattel mortgages contain in the stipulations as to the possession of the goods meanwhile—
“That if the debts secured thereby should not be paid according to the terms recited, the mortgagees could take possession of the property and sell and dispose of the same for the purpose of paying themselves and render the overplus, if any, to the mortgagor.”
“They also contain the usual stipulations providing, in substance, that in case the mortgagees, at any time before the debt becomes due, deemed it necessary for their more perfect security, they might take possession of the goods.”
These several mortgagees, acting under this latter clause of the *741 chattel mortgages, did take possession of the goods, and sometime after-they had actually taken possession, Mr. Rich made an assignment to T. R. Strong; upon the assignment to T. R. Strong, which was a general assignment for the benefit of the creditors of Mr. Rich, the mortgagees in possession of the g-oods, made an arrangement with Mr. Strong whereby it w'as agreed that he might assume and take possession of the goods as the agent of the mortgagees, and that he might sell and dispose of them, and out of the proceeds, after paying the costs of the sale, pay the mortgagees, and the balance, if any' there be, of course, could remain in his hands as assignee of the creditors of Mr. Rich.
Thereupon, under such an arrangement, Mr. Strong took possession of the goods from the mortgagees, and- while he had possession in that way. sometime after that, Sampliner and others who are defendants in error here, began a suit of replevin, making the assignee alone defendant, and replevied certain of said goods that were in; Mr. Strong’s hands as aforsaid. The petition in the replevin case was the ordinary petition in replevin. It did not set out the details in any way, or the manner in which Mr. Strong had come into possession; of the goods, or how lie claimed any title to them, if any he did claim; nor how the plaintiff claimed title; but it simply made the general averment that the plaintiff was the owner of the goods and entitled to immediate possession of them; that they had come into the hands of Mr. Strong as the assignee of Mr. Rich; that the plaintiffs had demanded them of him and that he had refused to deliver the goods.
Thereupon, they instituted this suit. They gave their bond in replevin to double the amount of the appraised value, which was between ten and eleven hundred dollars, or perhaps over eleven hundred dollars, and as it would appear, took the goods into their possession in the ordinary' way of replevin, after giving bond.
Thereupon, while that action of replevin u'as pending in the court of common pleas, these mortgagees, not having been named as defendants, voluntarily appeared before the court of common pleas representing that they had an interest in the subject of the action, and asked to be made parties defendant, and the court of common pleas ordered that they be made parties defendant and allotved them to file answers and cross-petitions in the case which they did. Subsequently', on motion of the plaintiffs in replevin, the court ordered their cross-petitions dismissed and ordered the cross-petitioners dismissed out of the action as being unnecessary and improper parties. Thereupon they took exceptions and filed these actions in error for the purpose of reversing that judgment of the court, dismissing them out of the replevin action; and that is the matter presented here for adjudication, that is, as to whether the court of common pleas correctly or erroneously ruled under those circumstances.
In behalf of the defendant in error, it is urged that whether the court of common pleas should allow' other parties, as these cross-petitioners, to come into the case or not, w'as a matter of discretion, and although lie had allotved them to come in, yet the same discretion- which he might exercise in allowing or refusing them leave to come in still existed, and that with a like exercise of discretion, he could dismiss them out of the case, having once allow'ed them in. It is also claimed on behalf of the defendants in error that, as the court of common pleas simply ordered their cross-petitions dismissed, ordered them dismissed out of the action, and as one paragraph of the motion asking them to be dismissed, and reciting that they had obtained this order to become parties without any notice to the plaintiffs in replevin, and without any kpowledge on their part — that peradventure, for all the record shows, the court of common pleas may have acted upon that paragraph, and simply dis *742 missed them because they had surreptitiously got into the case as defendants.
Now, first disposing of these two claims, we think that the same rule will not applyq upon the application of a party to be made a defendant, and upon a motion to discharge him, after he was made a party defendant, that even if it were a matter of discretion in granting the application in the first instance, after a party has been allowed to come in and prepare a cross-petition and file it and become a party defendant to the case, he ought not to be sent out of the case by order of the court without a fair and sufficient reason, and that upon the exercise of the mere discretion of the court of common pleas, the court could not dismiss him out of the action.
As to the other claim that, for all the record shows, the court may have acted on account of the want-of notice — we will say that we know of no direct requirement whereby it is necessary for a party thus asking to be made a party, to give previous notice to the other party or parties that may be already in the case. His application is presented to the court, and it is the court that must find whether or not, by the allegations that he makes, or the showing that he makes upon application, he is a proper and necessary party to come in, and if the court orders him to come in, or makes an order allowing him to come in, and he does come in. we think the court would not be justified in dismissing him from the action for the mere reason that he diet not give previous notice which was not directly required, there being no allegation of want of good faith in the matter, and no suggestion of any fraudulent creeping into the case, or interloping in it other than that.
The court of common picas in- its entry in this case, did not place its ruling upon the ground of a want of .notice, but found in so many words that, in its judgment, that these cross-petitioners were unnecessary and improper parties. So that we must presume that the order was not based upon want of notice. The judgment of the court of common pleas was that they were unnecessary and improper parties.
It most be supposed that the court of common pleas in dismissing these parties out of the action, held- that notwithstanding the facts that I have already narrated being shown by their answers and cross-petitions, nevertheless, the assignee in insolvency must be said to represent them in every claim that they could make properly in a replevin suit, and to represent them so thoroughly that his representation should be deemed exclusive, so that any act on- their part as parties would be utterly unnecessary.
Of course, the court could not have proceeded upon the idea that the cross-petitioners showed no interest in the subject of the action, because they had set up their mortgages and that they were in dispute, and we must suppose that they were in possession just as they allege; prima facie, they exhibited a most vital interest in the subject of the action, namely, the goods replevied.
Now. is it true that upon the assumption that the assignee did represent these parties, they were improper and unnecessary parties to the action? We think it docs not follow necessarily, and Union Bank v. Bell et al., 14 O. S., 200, decides this matter the other way. On page 211, I read:
"In the case before us, the defendants, tvho answer and set up the usury, are judgment creditors; but as their judgments tvere obtained subsequent to the execution of the conve3'ance in trust for the benefit of ■ creditors, there was no title remaining in the mortgagor on which a judgment lien could attach; and therefore, if these defendants have a *743 right to set up the defense of usury, it is in virtue of their being creditors •simply, and beneficiaries under the deed of trust.
"And we think they have such right.” (This was an assignment in insolvency.) "That the trustees under the deed of trust, might set up this defense is clear. But they are mere trustees. They have themselves no personal interest in this controversy. The real and substantial interests involved are in the cestues que trust whom they are entitled to represent, and to whose benefit the defense, if made by the trustees, must endure. But the trustees in this case have failed to answer, and thrown the'burden of defense upon the creditors whom they represent. We can see no reason why those creditors should not be permitted directly to make any defense which the trustees might make for their benefit. Section 85 of the code of civil procedure provides, that ‘any person may be made a defendant, who has or claims an interest in the controversy, adverse to the plaintiff.’ These creditors have an interest ini the controversy adverse to the plaintiff; they are, proper parties defendant as an idle ceremony merely, and that being such parties, they may not avail themselves directly of a defense which would be available for their benefit if made indirectly through their trustees, seems to us to be wholly inadmissible.”
It is very certain that if this subject of the action was real estate, and these parties had mortgages on the real estate, they would not only be proper, but necessary parties in a court seeking to deal with it, or to subject it. to sale. But they certainly had an interest in this personal property and. but for the assignment, they may have gone into a court of equity for foreclosure of their mortgages and have-made any party claiming any title or interest in the goods, a party defendant.
There are various considerations that arise and indicate that not only may parties, standing in the relation these parties did to the goods, be proper parties, but it rvoukl seem that the propriety of their being parties' arises almost to a necessity in one view of the case. The plaintiffs come here claiming that Mr. Rich, the assignor, obtained goods from the plaintiffs by fraudulent representations under such circumstances that the s„ale was voidable, and exercising the option of avoiding it, they brought this replevin suit.
Tf that is so. of course, there was in Mr. Rich, as against everybody up to the time of the replevin, at least, a title to those goods, and the plaintiffs, although defrauded of them, may have seen fit to waive their objection on the ground of fraud and to have held him upon the contract. It was for them to say. under the circumstances between them and Rich, whether or not they should rescind the sale, or whether they should let it stand and have their action for the purchase price, whatever that was.
Row, when they bring this replevin action for them and make the .assignee a party, supposing that upon the trial, they should show the truth of these claims that they make against him, namely, that the title obtained by Mr. Rich in the first place was a voidable title; that he had •obtained these goods by fraud, it would result from that, if a jury found that fact to exist, as against Mr. Rich, or as against his assignee for the benefit of creditors, the plaintiffs would prevail as-to all the goods, so that if the jury should be called upon to assess anything in favor of the defendant, it must rest wholly upon such rights as the chattel mortgagees might have as innocent purchasers to a portion of the goods.
Conceive a case of that kind to be given to a jury, and the court comes to charge, the jury; the judge must necessarily charge that if the jury find that the title was fradulently obtained, they could not find anything in favor of Rich and could assess no damages in favor of his *744 assignee merely as such' — merely as holding the property that Rich once had. _ But he would, have to deal with the other possible phases of the question for, peradventure, the jury might find that, notwithstanding the fraudulent purchase, the mortgagees were purchasers in good faith, and under such circumstances that replevin could not prevail against their mortgages. Somebody must set that up, and if the assignee alone were in that action, he alone must have a judgment, not for the value of the goods, but for the value of such portions of the goo'ds as were covered by the mortgage, and that, not for full value of the goods, but only to the extent of the amount unpaid on the mortgages. Supposing that there were three mortgages and as to two of them, the mortgagees were innocent purchasers for value, and as to the third one the mortgage had been taken guilder such circumstances that the mortgagee could not make out his claim of being an innocent purchaser; the court would have to deal with all of these questions, and the measure of damages which the jury must award to the assignee, or whomever was the beneficiary — the verdict of the jury for the defendant’s damages would have to be determined by the rights which the mortgagees alone had acquired — rights which never did come to Mr. Rich in such a way that he could enforce them as against the plaintiff’s rights, and which his assignee in insolvency could not, as such, enforce against them.
The assignee^ in insolvency, being the sole defendant in the replevin suit originally, did not set up these matters of the mortgaga; did not allege that, whatever may have been the original contract, those goods had been mortgaged to innocent purchasers — the mortgagees of Mr. Rich; but he simply set up a general denial except admitting generally that he was the assignee in insolvency of Mr. Rich.
It is possible that, under the holdings of the Supreme Court, that answer is sufficient to let in any kind of testimony that would defeat the plaintiffs in their title to the goods, either in whole or in part; but even if that is true as a strict matter of law, it will be seen that the assignee as such, would have very little interest in making that sort of a defense after all possibility of his getting out any goods for the creditors had faded away. And so, in view of that possible juncture of affairs, it would seem to us to be exceedingly appropriate that these parties — these mortgagees, should be allowed to make that defense.
Supposing, in. the case I have mentioned, the jury should bring in a verdict, say, of a thousand dollars, in favor of the defendant assignee; by the very necessity of the case, he would not know how to distribute that, and the probate court would not know how to distribute that as between the mortgagees, unless the jury should designate on account of which mortgage they allowed that, and whether thejr allowed it by virtue of any mortgage, or simply found generally against the plaintiffs, so that the verdict of the jury must necessarily be special to work out any kind of justice in the case, and no person would have such vital interest to see that the jury were properly instructed in that regard, as to the special findings thev should make, as to those mortgagees.
As to the propriety of allowing- these parties to be made parties defendant, the provisions of the code are pretty sweeping; for instance, sec, 5011, provides: ‘Tn an action for the recovery of real or personal property, a person claiming an interest in the property may, on his application, be made a party.”
Here are parties that certainly have an interest in these goods. This is an action for the recovery of personal property, and it is provided in sec. 4904. that: ‘'The rule prescribed in the preceding section may be so applied, when a person forfeits his bond, or renders his sureties liable, that any person injured thereby, or who is by law entitled to the benefit *745 of the security, may bring an action thereon, in his own. name, against the person and his sureties, to recover the amount to which he is entitled by reason of the delinquency, which action may be prosecuted on a certified copy of the bond'.” That is, when these plaintiffs in replevin gave their bond in replevin, they gave it under all the provisions of the statute bearing upon the subject, if the provisions of the statute would allow parties other than the mere nominal defendants to enforce it, as being interested in it, it is shown that it might be that these cross-petitioners would have a vital interest after a verdict of the jury in the amount of the bond.
It is not to be supposed, we think, that the court of common pleas dismissed these parties out of the action because their rights were not in jeopardy in any way in it; but that, being out of the action, they were perfectly free to. go and replevin the property themselves. We can hardly think that was the reason upon which the order was made. And upon this other motion, sec. 5006 provides that: “Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein.”
These are the general provisions as to which sec. 5014 is more specific. This applies generally to all actions and the other section applies specially to actions for the recovery of personal property.
Section 5013:
“The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, o.r hy saving their rights; but when, a determination of the controversy can not be had without the presence of other parties, the court may order them to be brought in, or dismiss the action without prejudice.”
I have already discussed how difficult it would be at least for the court to mete out general justice to all parties who had any interest in this case in replevin, that is, to complete 'final adjudication in the court of common pleas, without the presence of these parties here. Section 5005 provides, that, “all persons having an interest in the subject of the action, and in obtaining the relief demanded, may be joined as plaintiffs, except as otherwise provided.”
In section 50.16, it is provided, “upon affidavit of a defendant before answer, in an action upon contract, or for the rceovery of personal property, that a third party, without collusion with him, has or makes a claim to the subject of the action, and that he is ready to pay or dispose of the same as the court may direct, the court may make an order for the safe keeping, or for the payment or deposit in court of the subject of the action, or the delivery thereof to,,such person as it may direct, and also an order requiring such third party to appear in a reasonable time, and maintain or relinquish his claim against the defendant.”
It will be seen from these various sections and others that might be cited, that it was the idea of the makers of the code to adjudicate in one action the rights of all parties in the subject of the action, so far as it could be properly done; so that we think there was ample power to allow these parlies to come in, and under the direct provisions of the code, they were proper parties, and the considerations to which I have already; alluded would seem to indicate that the propriety, as I have said, amounts'; almost to a matter of necessity, and "it would be sanctioned by this case.’ Union Bank v. Bell, supra.
All that proceeds upon the idea, so far as I have discussed it, that the assignee in insolvency does in fact, or might in fact, represent every, interest here, of these mortgagees; and that their interest under these circumstances had passed over to the assignee. Where the assignee takes *746 the title and the possession of property immediately from the assignor,, then the lienholders upon the property must seek their remedy through the assignee and the orders of the probate court which directs him. But there is no direct holding as to the right of mortgagees of personal property who have actually assumed possession, or are in possession before the assignment.
It may be said here, that whatever their rights may have been, if they had simply held on to the possession in defiance of the application of the assignee to be allowed possession, in this particular case, they allowed the assignee, the person who was in fact assignee, to go into, possession of the goods, although they say it was by some arrangement by which he became their agent. It is a subject for thought whether it is not ani unfortunate position for the one man to occupy; possibly the different interests may become antagonistic. There is ground for argument that where mortgagees have thus allowed the assignee to come into possession, no matter under what general arrangement, if they made any arrangement whereby his title and the possession were allowed to merge, the matter is to be disposed of exactly as if they had not taken possession beforehand and he had taken possession generally as assignee. I say, without deciding that question, it is a matter that would warrant argument on both sides, and it shows that it should have the consideration of the court with all parties in interest before it.
Suppose it to be held finally that the assignee did not in the circumstances, represent the prior mortgagees; quite likely the claim might be-made in the'court of common pleas that he simply took such title as Rich had, and had not the power to represent the rights which the mortgagees had, and which had accrued to them by reason of the acts, lately anterior to his appointment.
I do not say that that argument would prevail, but it is an argument still, and bears upon the propriety of allowing these parties to remain in-in the court of common pleas and make their fight.
And now, over and beyond all these claims, there is another view that might be taken of a case of this kind, which I will now endeavor to present. Supposing that the law of Ohio regarding the assignment of’ personal property were now such that when the owner of property makes a chatel mortgage, even if the mortgagee comes into possession before the mortgagor assigns, but he assigns before the mortgagee has. reduced the property to money and paid himself; suppose the law should, be held to mean that the assignee had, in fact, the right to the possession, even as against the mortgagees, the right of demanding it of them, and compelling them to yield it up; that is, suppose that the whole scheme of the statute should be held to mean that when personal property is assigned generally for the benefit of creditors, the assignee immediately represents all parties; that upon his acceptance of the assignment, the whole property of the assignor comes into the custody and jurisdiction of the court, itself presiding over the matter of this assignment; then the effect would be that the mortgagees must take their mortgages with reference to the statute. The terms of the statute would enter into them and become a part of them. So, if they were, to have any actual possession, as in this case, they might be compelled to turn it over to the assignee because if held so, the property being in the custody of the law, the law pointing out that it should be reduced to money by the agency of the assignee, that method must be followed.
If that were the view of the -case, it would probably follow that the party who claimed that the goods were held by the assignor by a voidable title, and who sought to replevin them, would not be allowed to. *747 institute an ordinary action in replevin and talce them from the possession of the assignee thus pointed out, but 'must seek his remedy in an application to the probate court which had! jurisdiction of the goods and their disposition, to have the sale rescinded and their possession restored. If that were so. if he were not allowed legally to prosecute an action in replevin, but must go into probate court and seek his remedy, if he did' begin an action in the court of common pleas, notwithstanding that it would be of exceeding importance that some person' should intervene in the court of common, pleas, and apprise it of the facts under which his replevin suit was instituted so that it might make an order forbidding the delivery of the goods by the sheriff to the plaintiff in the ordinary way; or that, being apprised of the facts, it might order the sheriff to hold the goods until proper application could be made to the probate court for the appropriate remedy. In such a case, where a party had interfered with goods in the possession and legal custody of the law, as administered by the probate court — if that were the law — then the only pleadings that would apprise the court of common pleas of this situation of affairs in- this particular case were the very cross-petitions which were stricken from the files, thus leaving no pleadings in the court of common pleas showing the facts.
Without deciding that this is the law of the case or whether it is or not, but seeing that possibly it might be the law in the case, the suggestion bears upon the question here. The Supreme Court of Illinois in more than one case, especially in the 115th Illinois, 220, directly holds:
“After the county court has once acquired jurisdiction of the estate ol an assigning debtor, he and the assignee and all other persons having an interest in or upon the estate, are subject alike to the judgment of that court; and a claimant of any property assigned for the benefit of creditors will not be allowed to take the same from the assignee by a writ of replevin from another court, but he may present his claim to the county court, which is authorized to call a jury to try the right of property.”
I read from the opinion of the court on page 224:
“It is true that the right and power of a failing debtor to pass the-title of his effects to an assignee remain as they did before the statute, but this is all. The power to control the disposition and beneficial enjoyment of his property upon such transfer of the title- is essentially different from what it was before the statute. Prior to its adoption, the insolvent debtor could distribute his property among his creditors just as he pleased. If there was not sufficient to pay all, he might direct the-whole of one’s claim to be paid and only half of others, or he might prefer the claim of a single creditor to the exclusion of all the others, and' the assignee would be bound to carry out his directions. Then- the county court had nothing to do with the assignee, or the effects in his hands as such _ assignee. Such is not the case now. The statute has wrought a radical change in the law in these and other respects. All voluntary assignments for the benefit of creditors now stand on the same footing. The effects of the assignor must in all cases be distributed' ratably among his creditors, and any provisions in the deed of assignment directing otherwise will be inoperative and void.”
On page 227, after going through and citing- the statutes of the state of Illinois, which in fact seem to be very similar to our own, the. court says:
“The careful consideration of the several sections constituting the-above act, particularly the 7th and last, will leave but little, if any, doubt ini our minds that it is essentially, in its framework and detail, a general insolvent law, and that it was so intended by the legislature. By its- *748 provisions a new and special jurisdiction was created and conferred upo* the county courts of the state, in the exercise of which it is manifest they would, to say the least of it, be greatly embarrassed if any interference 'by other tribunals were permitted, where the jurisdiction has once attached. Indeed, to permit such interference would practically defeat the chief object of the statute, namely, to provide a convenient, expeditious ■ and inexpensive tribunal through the instrumentality of which an- insolvent debtor may make an entirely equitable distribution of his effects among his creditors. If alter the jurisdiction of the county court has attached third parties having real or pretended claims to or upon trust estates were permitted, by means of process issued out of other courts, to take possession of the property in the hands of the assignee, for the .purpose of litigation in such other courts, the county court by this means might be deprived of its jurisdiction altogether. In any event it would necessarily so retard and embarrass proceedings in the county court that it would be impossible to administer the estate in the manner or within the time prescribed by the act, and to that extent would render the statute inoperative. A construction leading to that result ought not to be adopted. To give the statute practical effect in all its provisions, would fully constrain us to hold, as we do, that upon the making, filing and recording of an assignment, with the lists and schedules annexed, the county court wherein such assignment is filed and recorded, in its character as an insolvent debtor’s court by operation of law at once acquires jurisdiction over and takes possession of all the property and estate embraced with in the assignment, subject, of course, to all prior liens or claims that other parlies may have to or upon it. The fact that the legal title is in the assignee and that he acquired it by the voluntary act of the assigning debtor, makes no difference in this respect. As a valid assignment can now only be made under the statute, and when so made must be administered and distributed substantially in conformity with its provisions, it is a matter of little, if any, consequence as to just where the legal title is or by what method it was acquired, except so far as it affects the jurisdiction of the court. The assignee, the insolvent debtor and all persons claiming an interest in or upon the fund, are subject alike to the summary jurisdiction of the court, and whatever rights, real or supposed, with respect to the fund must primarily be litigated therein, and that there may be no. failure of justice, the act, as we have already seen, clothes the court with power, when in its judgment the exigencies of the case require it, to order a trial by jury. While the legal title to the fund as in the assignee, the possession of it, as we have just seen, is in the court, and the assignee’s relation to the court is analogous, in some respects, to that of a receiver, or of an assignee in bankruptcy. If effect is to be given to these general principles, and the statute is to receive a construction which will effectuate the objects and purposes of the legislature in adopting it, it is clear there was no right to replevy the goods in question, as was sought to be done. 103 Ills., 329; 7 Blanch, 18.”
The Supreme Court of Ohio, to be sure, has never gone to that length, but it will be seen that if the whole controversy may be drawn in the replevin suit to the court of common pleas, the whole administration of these assignments might be taken out of the probate court where the statute has put it and be brought into the court of common pleas. As I have before said we do not hold that the views expressed by the Illinois court should be adopted as the law in this case, but it is a view of the matter which might be presented; and in view of all the reasons which we have discussed, it seems clear to us that it was proper and in fact, necessary to allow these parties having specific liens upon those goods, *749 being already in the court of common pleas, to remain as cross- petitioners therein, and so to be in a situation to aid the court finally in disposing of the case. For these reasons, we think the court of common pleas may be said to have erred in dismissing the cross-petitioners from the case; therefore, it is ordered in each of these cases, that the judgment of the court of common) pleas be reversed and the case will be remanded to the court of common pleas for further proceedings.
Stewart & Rowley, for plaintiffs in error.
J. H. Sampliner, L. C. Laylin and C. H. Stewart, for defendants in error.